UNITED STATES DISTRICT COUT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

SHEDRICK LANG,

      Plaintiff,

Vs.

AT&T CORP., a foreign Corporation

      Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, SHEDRICK LANG ("LANG" or "Plaintiff") individually and files this Complaint and Demand for Jury Trial.  Plaintiff sues AT&T CORP. ("AT&T" or "Defendant"), and alleges:

## **NATURE OF THE ACTION, JURISDICTION AND VENUE**

1.     This action is brought pursuant to 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et. seq., and the Florida Civil Rights act §§760.01-760.11, Florida Statutes (2008).

2.     This action is for discrimination in employment, based on Plaintiffs' LANG's race and color ("black") and for retaliation motivated by all Plaintiff's objections to discrimination in the workplace.

3.     The Court has jurisdiction of the Federal claims under 28 U.S.C. §§1331 and 1337.

4.     The Court has jurisdiction of the State law claims under 28 U.S.C. §1367.

5.      At all times relevant hereto Plaintiff was and is a resident of the State of Florida, Palm Beach County, Florida and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Palm Beach County, Florida, thus venue is appropriate in this Court.

## PARTIES

6.      Plaintiff, LANG is an African-American black male U.S. citizen and current employee of the Defendant.

7.      Defendant, AT&T CORP., is a foreign corporation, with its principal place of business in Bedminster, New Jersey, and conducted business throughout the State of Florida including within Palm Beach County, Florida and other counties within this courts district.  At all relevant times hereto AT&T employed fifteen (15) or more employees for twenty (20) weeks or more during any relevant period of time.

## CONDITIONS PRECEDENT

8.      On or about October 3, 2017, Plaintiff, LANG, timely filed his first administrative charge with the Miami Division, Equal Employment Opportunity Commission, alleging discrimination based on race and color (black) and further alleging retaliation for having objected to illegal discrimination. A copy of the 1st Charge is attached hereto as Exhibit "A."

9.      On or about June 7, 2018, Plaintiff, LANG, timely filed his second administrative charge with the Miami Division, Equal Employment Opportunity Commission, alleging discrimination based on race and color (black) and further alleging retaliation for having objected to illegal discrimination. A copy of the 2nd Charge is attached hereto as Exhibit "B."

10.     On or about February 5, 2021, Plaintiff, LANG was mailed and thereafter received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission as to both his 1st and 2nd Charge.  A copy of said Notices of Right to Sue are attached to this Complaint as Exhibit "C.".

11.     The Florida Commission on Human Relations did not issue a finding on Plaintiffs' administrative charges within 180 days of the filing of said administrative charges.

12.     Any and all conditions precedent to bringing any and all claims asserted have been met or made as required by law.

## FACTUAL ALLEGATIONS

13.     Plaintiff, LANG, has been employed by Defendant or a predecessor in interest full time in various positions from approximately January 3, 2005.

14.     The Discrimination that Plaintiff, LANG, was subjected to on a regular, daily and consistent basis commenced as early as November 2016 or earlier and continues up and through this date.

15.     While working for AT&T, multiple and daily discriminatory incidents occurred primarily involving, LANG's immediate supervisors at AT&T, including but not limited to the allegations set forth herein.

16.     Plaintiff began his career with AT&T (formerly Cingular Wireless) on January 3rd, 2005 as a Retail Sales Consultant in Delray Beach. Within his first year, he made it to the "Summit". A feat, he was told, that is quite rare for new a hire.

17.     After about 5 successful years of exceeding sales goals, Plaintiff began to apply for and seek a promotion to numerous open and posted positions. Plaintiff assumed it would be

easy considering his excellent track record and the fact that fellow white co-workers, like Mike VanHorn, a white male, were constantly being promoted despite having mediocre sales or performance records far less superior to that of Plaintiff. Mr. VanHorn and other non-black co-workers would go on to be promoted numerous additional times to various roles.

18.     All of Plaintiffs requests and application for promotion during 2010 were denied or ignored.

19.     After continually being denied promotions Plaintiff complained to the HR Manager, Maureen Freeman, in a closed-door meeting, that he was frustrated at not being promoted and explained that he believed it was due to his race and color.

20.     After many more attempts, finally in or around 2011 a panel interview was scheduled for an Assistant Store Manager position with Michael Moore (the manager who originally hired Plaintiff), Maureen Freeman and another area manager.

21.     Mr. Moore, who had been promoted to an area manager, was aware of Plaintiffs excellent sales accomplishments and Plaintiff came to the interview prepared with an impressive resume.

22.     At the conclusion of the interview Ms. Freeman asked Plaintiff, while the other interviewers were present, if he still felt that he was being overlooked for promotions due to his race. Plaintiff was immediately taken aback as he felt the meeting was confidential and private. He was speechless and, to prevent from jeopardizing his one and only opportunity at being promoted he said "no".

23.     A few days later Plaintiff received a call stating that he was selected for the role as Assistant Store Manager.

24.     In 2011 Plaintiff was assigned to the Wellington Green Store where he successfully assisted the store in increasing sales in all metrics. After being in the store for less than a year, Plaintiff was assigned to the Delray Beach store because the manager at the time, Chris Shurley, had received a promotion and would be moving out of state. Plaintiff became the acting manager until a permanent store manager was placed.

25.     Plaintiff worked for approximately a month before they assigned Brendan Carlin, a white male, to the store to assist. He was co-acting manager while they awaited the placement of a permanent manager.

26.     Before Mr. Carlin arrived, Plaintiff would work from open to close. After his arrival, Plaintiff and Mr Carlin agreed that Mr. Carlin would open the store and Plaintiff would close the store. They kept this arrangement even after the placement of the permanent manager Gail Deviddio who became responsible for setting their schedules, but never told them to change or alter the agreement they had made.

27.     While being assigned to the Delray store Plaintiff and the store not only met but exceeded all sales metrics.

28.     After several months of being assigned to the Delray store an organizational change was announced and Ms. Deviddio was assigned to the floating manager role and Fran Zamitta was assigned to replace her.

29.     In or around June of 2012 Plaintiff was asked to join Ms. Zamitta, Ms. Deviddio and Mr. Moore in the manager's office where Plaintiff was questioned about attendance. It was explained to Plaintiff that a time sheet audit had been conducted by the Human Resources department and it was discovered that he had been late 30 plus times and Mr. Carlin was late nearly 30 times. Plaintiff explained the shift agreement that Mr. Carlin and he had and that no

one ever addressed it while it was occurring so assumed there were no issues with the same and that was why the audit would show him and Mr. Carlin being late, when they were in fact not.

30.     A few days later Ms. Deviddio returned to the store to confront Plaintiff about the statement he made to Mr. Moore regarding the attendance issue. She asked Plaintiff "why did you lie?". Plaintiff explained to her that she never addressed the issue and that if his tardiness was so much of a concern why on numerous occasions would she then request that he stop by Starbucks on way to the store to pick her up a Caramel Machiatto skinny.

31.     The Human Resources department investigated the issue of attendance and at the conclusion of the investigation Plaintiff was verbally reprimanded and told to "straighten it out" by Mr. Moore and adhere to the schedule created by the manager going forward.

32.     A short time after this incident Mr. Carlin received a promotion to a Training Manager role with commendations from both Ms. Deviddio and Mr. Moore.

33.     In August of 2012 Plaintiff was asked to join Ms. Zamitta in the manager's office for a telephone conference with Mr. Moore. After arriving Mr. Moore advised that Plaintiff would need to "step down" to the Retail Sales Consultant position. At this time Ms. Zamitta began to question why and explained that Plaintiff's attendance was not an issue and that the store sales were doing well. Mr. Moore then insisted that Plaintiff take the demotion voluntarily or he would reassign Plaintiff to a low performing store and put Plaintiff on a performance improvement plan thereby ensuring his failure and subsequent termination.

34.     Plaintiff was confused as to why Mr. Moore was taking this approach and questioned him. Mr. Moore continued stating his demands and after feeling defeated and having no choice Plaintiff agreed to step down to the Retail Sales Consultant role. Plaintiff was now back to where he originally started.

\\ccfs\files\Lang, Shedrick\Lang v AT&T\COMP\Complaint 1982 Title VII and FCRA 210323CHRIS.docx

35.     Plaintiff was then assigned to the Okeechobee store where India Judd, a white female and former coworker, was now the store manager.

36.     While working in the Okeechobee store Plaintiff once again exceeded all sales goals in all metrics. Accordingly, Plaintiff again sought and applied for promotions to numerous open management positions all to no avail.

37.     While working a shift at the Okeechobee store and after being continually shut down in his efforts to seek a promotion, Plaintiff was so distraught and overcome with grief that Ms. Judd summoned him to her office. She inquired as to what was wrong and Plaintiff began to express his frustration of how he was being treated differently because of his race in a company that he dedicated so much to. Ms. Judd then devised a plan to have Plaintiff moved to another position by seeking a job accommodation due to the fact that Plaintiff broke his ankle just a few months before. She reached out to the hiring manager of the Global Legal Demand Center (formerly the National Compliance Center) to see if he could be placed there as a Legal Analyst.

38.     Plaintiff had previously applied for the Legal Analyst position numerous times and interviewed once but was never selected. This is despite the fact two of his former Managers (Freya Chatelain and Denise Cairns) worked in the department and recommended him for the position.

39.     In early 2014 Plaintiff received a call from Lisa Likely who explained that she had a lesser position in mind for Plaintiff in the Global Legal Demand Center. She directed Plaintiff to go on-line and apply for the Associate Analyst position which was a step down from the Legal Analyst position and the equivalent of a mail clerk position. Considering Plaintiff had attempted numerous times to be promoted into this department he figured he would get his foot

in the door and prove worthy of a promotion and work his way up. Plaintiff was then given the Associate Analyst position.

40.     After some time passed Plaintiff would regularly inquire about promotions to open Legal Analyst positions but was denied and/or discouraged each time.

41.     Plaintiff continuously objected and pointed out that his white counterparts who hadn't achieved the accomplishments he had, did not possess the tenure and work experience he had and who were less qualified than he were being promoted.

42.     Plaintiff held several meetings with management pointing out the unfair treatment and how he felt it was based on my race and color.

43.     1n November 2016, Plaintiff had a meeting with Director Mary Anderson to discuss the unfair treatment and consideration for promotions that he was receiving. The meeting was concluded with the understanding that Plaintiff would apply for a Security Analyst position as soon as one became available.

44.     On January 23, 2017, Plaintiff applied for one of three open Compliance Analyst positions, and was granted an interview on March 29th only after inquiring numerous times on the status of his application.

45.     After the interview Plaintiff waited over a month for a response regarding the status of the unfilled position, he spoke with his supervisor, Rami Eid, and inquired if he had heard anything. He had not. Rami stated he would reach out to the interviewing Associate Directors for an update.

46.     On April 24, 2017, Plaintiff had a meeting with Mr. Gross and Ms. Nelson, who advised him that he was not selected for the position and that a "more qualified candidate" was selected. In fact, a lesser qualified white individual was selected over Plaintiff.

47.     Plaintiff sent a letter on May 11, 2017 via certified mail to corporate Human Resources complaining about racial discrimination. On May 24, 2017, Plaintiff received an email from Ashley Strong, Lead Consultant, EEO Human Resources, confirming receipt of Plaintiff's complaint. On May 30, 2017, a phone conference was scheduled with Ms. Strong; however, she never contacted Plaintiff. Accordingly, Plaintiff sent her a follow up email and was later informed that his case was being referred to another consultant.

48.     On July 13, 2017, Plaintiff spoke with the new Lead Consultant assigned to his complaint and discussed his complaint. The new Lead Consultant stated that she would be reviewing the documents and she would be contacting him soon.

49.     On August 7, 2017, Plaintiff contacted the new Lead Consultant via email regarding the status of his complaint. She responded to his email and stated that she found nothing that supports any form of discrimination and that his complaint would be closed. AT&T took no action with regard to Plaintiff's complaint, did not conduct a proper investigation of the same and did not address any of the issues in Plaintiff's complaint.

50.     In September of 2017, Plaintiff applied for the position of Assistant Store Manager. In retaliation for complaining about discrimination, Plaintiff was not contacted for an interview.

51.     On or about October 3, 2017 Plaintiff filed his first charge of discrimination with the EEOC, a copy of which is attached hereto as Exhibit "A."

52.     After filing and because he filed his first charge with the EEOC, Plaintiff was targeted for elimination and forced out of his then current position.

53.     Before contacting the EEOC Plaintiff sent several emails to Christian Sanchez and to Mary Anderson regarding the work conditions in the GLDC and, how he felt that he was

unfairly being looked over for promotions and assigned more work than his counterparts. In several communications Plaintiff expressed how the disproportionate work assignments were affecting his health and that he needed assistance with the workload. When he didn't receive a response, Plaintiff reached out to Kelly Foster, his assigned relationship manager, for assistance and despite all of the evidence presented the workload was not reduced, instead, it was increased, and Plaintiff was assigned the additional duty of stuffing envelopes with invoices. Some days Plaintiff would receive a weeks' worth of invoices which was nearly impossible to finish along with his other duties.

54.     On one occasion Plaintiff reported that due to the heavy work load he was suffering from headaches and that his vision was blurred. As such, one day he laid my head on his desk and was reprimanded for doing so.

55.     When the problem persisted, Plaintiff visited a vision doctor; and as expected his vision had deteriorated from a perfect 20/20 to a 20/40. The amount of work assigned had caused irreparable damages and to this day Plaintiff is still experiencing blurred vision and headaches.

56.     In or around October 2017 several AT&T business units underwent reorganization and Plaintiff's department was reassigned to the Finance group under Kent Mader's leadership. It was announced that he would be visiting Plaintiff's center in his efforts to assess and reduce the budget by streamlining work processes. During this visit he was to meet with each department to observe and learn the day-to-day operations. At no time did he visit the clerical department, where Plaintiff worked, to observe their work processes.

57.     On December 13, 2017, Plaintiff sent an email demanding a salary increase due the amount of workload that had been assigned to him. The request was denied despite the

acknowledgment by his immediate supervisor, Rami Eid, that Plaintiff was assigned more work than his co-workers on his annual review.

58.     In January 2018 the GLDC underwent its own reorganization where several analysts and job titles were reassigned. Only one person in the clerical department, Josie Gibson - white female, was promoted out and reassigned to report directly to Mary Anderson. The two remaining analysts, Plaintiff and Valeria Rojas- Hispanic female, remained in their previous roles.

59.     Several weeks later in February 2018, Plaintiff, Ms. Rojas and others in his department received surplus notices explaining that their positions were in jeopardy of being eliminated. Two conference calls were arranged - one for people who were safe and another for those who would potentially lose their jobs. Ms. Rojas and Plaintiff were instructed to be on the call for those whose job titles were being eliminated.

60.     Once Plaintiff was informed that his position was being eliminated Plaintiff was instructed to go and apply for available management positions and, that he should receive first priority considering his surplus status.

61.     Plaintiff applied for several 1A and 1B management positions that were available at that time. Plaintiff applied for the In Home Solutions position and was interviewed. Plaintiff was in the running for the position but was advised that the hiring manager would not be able to make a decision for several weeks. Knowing this, Plaintiff continued to apply for other positions as he only had a short time to find a position. After not being considered or offered any management positions, Plaintiff was forced to considered taking a non-management position and returning to a Retail Sales Consultant position.

62.     Before accepting the lower-level position Plaintiff reached out to the Human Resources department to inquire as to how taking a reduction in job level would impact his pay. An email was sent to several members in the Human Resources Department inquiring about the same. In response he was advised that he would be able to keep his current salary for at least 6 months. Accordingly, Plaintiff accepted the lower-level position based on the response that he received from his inquiry.

63.     Shortly after returning to the retail store Plaintiff received a call from Connie Black stating that he was given misinformation and that he would not be able to keep his salary. Plaintiff expressed his concern and questioned how this could occur after several HR specialist were consulted. During the conversation Plaintiff inquired if Ms. Black was aware of his first EEOC complaint, to which she replied that in fact she was. Plaintiff then expressed concern that this was in retaliation and that he would need to see company policy stating that he would not be able to keep his salary. After not receiving the desired response Plaintiff reached out to the ethics hotline to report the retaliation.

64.     As a result of Plaintiff's complaint to the Ethics Hotline, an investigation was conducted it was determined that he had been retaliated against and Plaintiff's salary was increased, and retro activated based on their findings.

65.     After returning to retail sales, Kent Mader reached out to Plaintiff inquiring about his new role in retail sales. In response Plaintiff expressed that he was aware that it was not Mr. Mader's decision to eliminate the clerical position, but the decision of Mary Anderson and that his race and the filing of a Charge with the EEOC was why he had to accept a lesser job and not be considered for other available analyst or management positions.

66.     An investigation was launched shortly thereafter and several analysts in the GLDC department were contacted. After the conclusion of the investigation, it was determined that Ms. Anderson did in fact unfairly target Plaintiff and Ms. Anderson was subsequently demoted and reassigned to another department.

67.     On or about June 7, 2018 Plaintiff filed his second charge of discrimination and retaliation with the EEOC, a copy of which is attached as Exhibit "B."

68.     In 2019 Plaintiff's position on the Mobile Retail team was eliminated and Plaintiff was advised that since his position was a management level position that he could transition to another management role. Accordingly, Plaintiff began to apply for open assistant store manager positions and each time Plaintiff would receive an email stating that he wasn't selected despite the fact that he was one if not the most qualified candidate for the positions

69.     Again, Plaintiff filed another internal EEO complaint where he showed that all of the non-black employees transitioned to manager roles whereas the African American employees had to apply but were denied. Another investigation ensued and at the conclusion of the investigation Plaintiff was advised that there were findings of discrimination and that the necessary corrective actions had been taken and that the matter was closed. Regardless no corrective action was taken as to Plaintiff.

## COUNT ONE
## (Violation of 42 U.S.C. §1981 – Racial Discrimination)

70.     Plaintiff, LANG, incorporates by reference paragraphs 1 through 69 above, as if fully restated here.

71.     Plaintiff, LANG, is a member of a protected class based on his race and color.

72.     At all times relevant, Plaintiff, LANG, was qualified to perform the duties of his job.

73.     Plaintiff, LANG, was denied promotions and opportunities to advance, demoted and otherwise suffered adverse employment actions by Defendant, AT&T, based on his race and color.

74.     Defendant, AT&T, through its agents, supervisors, and others, acted with intent to discriminate against Plaintiff, LANG, based on his race and color.

75.     Defendant AT&T treated similarly situated white employees as a class more favorably than Plaintiff, LANG.

76.     Defendant AT&T violated rights guaranteed to Plaintiff, LANG, by 42 U.S.C. §§1981 by intentionally discriminating against Plaintiff based on his race and color, in connection with his employment.

77.     The rights violated by Defendant were clearly established statutory or constitutional rights of which a reasonable person would have known.

WHEREFORE, Plaintiff, SHEDRICK LANG, prays for judgment against AT&T CORP., for appropriate prospective and injunctive relief; and for judgment against AT&T CORP., for compensatory damages including lost wages and benefits, front pay (or reinstatement) and benefits, damages for emotional distress, pain and suffering and mental anguish, punitive damages, attorney's fees and costs, an order placing Plaintiff, SHEDRICK LANG, in the position he would have occupied absent the discrimination, and such other relief as the Court deems just and proper.

## COUNT TWO
### (Violation of 42 U.S.C. §1981 – Retaliation )

78.     Plaintiff, LANG, incorporates by reference paragraphs 1 through 69 above, as if fully restated here.

79.     Plaintiff, LANG, engaged in activity protected by 42 U.S.C. §1981 when he complained of racial and color-based discrimination.

80.     At all times relevant, Plaintiff, LANG, was qualified to perform the duties of his job.

81.     Plaintiff, LANG, was subjected to adverse employment actions by Defendant AT&T based on his race and color.

82.     Defendant, AT&T through its agents, supervisor, and employees, acted with intent to discriminate against Plaintiff, LANG, based on his race and color.

83.     Defendant AT&T treated similarly situated white employees class more favorably than Plaintiff, LANG.

84.     Defendant AT&T violated rights guaranteed to Plaintiff, LANG, by 42 U.S.C. §1981 by intentionally retaliating against Plaintiff, LANG, based on his objection to racial discrimination, in connection with his employment.

85.     The rights violated by Defendant AT&T were clearly established statutory or constitutional rights of which a reasonable person would have known.

WHEREFORE, Plaintiff, SHEDRICK LANG, prays for judgment against AT&T CORP., for appropriate prospective and injunctive relief; and for judgment against AT&T CORP., for compensatory damages including lost wages and benefits, front pay (or reinstatement) and benefits, damages for emotional distress, pain and suffering and mental anguish, punitive damages, attorney's fees and costs, an order placing Plaintiff, SHEDRICK LANG, in the

position he would have occupied absent the discrimination, and such other relief as the Court deems just and proper.

## **COUNT THREE**
### **(Florida Civil Rights Act – Racial  based Discrimination)**

86.     Plaintiff, LANG, incorporates by reference paragraphs 1 through 69 above, as if fully restated here.

87.     Plaintiff, LANG, is a member of a protected class under the Florida Civil Rights Act ("FCRA"), Sections 760.01-760.11, based on his race and color.

88.     At all times relevant, Plaintiff, LANG, was qualified to perform the duties of his job.

89.     Plaintiff, LANG, was subjected to adverse employment actions because of his race and color when he was subjected to denied promotions and opportunities to advance his career and regularly demoted.   Each of these actions by Defendant AT&T affected the compensation, terms, conditions, or privileges of Plaintiff's, LANG, employment, deprived him of employment opportunities, or adversely affected his status as an employee.

90.     Defendant AT&T at all times relevant hereto had actual and constructive knowledge of the conduct described and alleged in this complaint and incorporated herein.

91.     As a result of the discriminatory actions perpetrated by Defendant AT&T and maintained by Defendant's failure to protect Plaintiff from further discrimination, Plaintiff, LANG suffered emotional distress.

92.     Defendant AT&T violated the FCRA by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of their employees and management as described and alleged in this complaint and incorporated herein.

\\ccfs\files\Lang, Shedrick\Lang v AT&T\COMP\Complaint 1982 Title VII and FCRA 210323CHRIS.docx

93.     Defendant AT&T failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

94.     As a direct and proximate result of Defendant's willful, knowing and intentional discrimination against him, Plaintiff, LANG has suffered and will continue to suffer pain and suffering, mental anguish and emotional distress and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff, LANG is thereby entitled to general and compensatory damages in amounts to be proven at trial.

95.     As a further direct and proximate result of Defendant's violation of the FCRA, as heretofore described, Plaintiff, LANG has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant AT&T, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.  Plaintiff, LANG requests that attorneys' fees and costs be awarded pursuant to Florida law.

96.     Plaintiff, LANG is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant AT&T described above was done with oppression and malice, with a conscious disregard for his rights and with the intent, design and purpose of injuring him. Plaintiff is further informed and believes that Defendant AT&T, through their officers, managing agents and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct of their employees and managers.  By reason thereof, Plaintiff, LANG is entitled to punitive or exemplary damages from Defendant AT&T in a sum according to proof at trial.

97.     Defendant AT&T treated similarly situated white employees more favorably than it treated Plaintiff, LANG in that it did not subject them to the same discriminatory treatment.

98.     Defendant's AT&T's stated reason for taking the actions they did are all pretextual.

WHEREFORE, Plaintiff, SHEDRICK LANG, prays for judgment against AT&T CORP. awarding Plaintiff, SHEDRICK LANG, damages for lost wages, front pay (or reinstatement) and benefits, damages for emotional distress, pain and suffering and mental anguish compensatory and punitive damages, prejudgment interest on all monetary recovery, attorney's fees and costs, and such other relief as is equitable and just.

<u>**COUNT FOUR**</u>
<u>**(Florida Civil Rights Act – Retaliation)**</u>

99.     Plaintiff, LANG, incorporates by reference paragraphs 1 through 69 above, as if fully restated here.

100.    Plaintiff, LANG, engaged in protective activity under the FCRA when he objected to racial and/or color based discrimination, which is prohibited by the FCRA.

101.    At all times relevant, Plaintiff, LANG, was qualified to perform the duties of his job and those for which he applied.

102.    Plaintiff, LANG, was subjected to adverse employment actions in retaliation for his complaints of racial and/or color based discrimination; he was denied promotional and other opportunities.  Each of these actions by Defendant AT&T affected the compensation, terms, conditions, or privileges of Plaintiff's, LANG, employment, deprived him of employment opportunities, or adversely affected his status as an employee.

103.    Defendant AT&T at all times relevant hereto had actual and constructive knowledge of the conduct described and alleged in this complaint and incorporated herein.

104.    As a result of the retaliatory actions perpetrated by Defendant AT&T and

maintained by Defendant's failure to protect Plaintiff from retaliation, Plaintiff, LANG suffered emotional distress.

105.    Defendant AT&T violated the FCRA by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of their employees and management as described and alleged in this complaint and incorporated herein.

106.    Defendant AT&T failed to comply with their statutory duty to take all reasonable and necessary steps to prevent retaliation in the workplace and to prevent it from occurring in the future.

107.    As a direct and proximate result of Defendant's AT&T's willful, knowing and intentional retaliation against him, Plaintiff, LANG has suffered and will continue to suffer pain and suffering, mental anguish and emotional distress and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff, LANG is thereby entitled to general and compensatory damages in amounts to be proven at trial.

108.    As a further direct and proximate result of Defendant's AT&T's violation of the FCRA, as heretofore described, Plaintiff, LANG has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.  Plaintiff, LANG requests that attorneys' fees and costs be awarded pursuant to Florida law.

109.    Plaintiff, LANG is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant AT&T described above was done with oppression and malice, with a conscious disregard for his rights and with the intent, design and purpose of injuring him. Plaintiff is further informed and believes that Defendant AT&T, through their officers, managing

agents and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct of their employees and managers. By reason thereof, Plaintiff, LANG is entitled to punitive or exemplary damages from Defendant AT&T in a sum according to proof at trial.

110.    Defendant AT&T treated similarly situated employees who had not complained of racial and/or color discrimination more favorably than it treated Plaintiff, LANG.

111.    Defendant's AT&T's stated reason for terminating Plaintiff's, LANG, employment was pretextual.

WHEREFORE, Plaintiff, SHEDRICK LANG, prays for judgment against AT&T CORP. awarding Plaintiff, SHEDRICK LANG, damages for lost wages, front pay (or reinstatement) and benefits, damages for emotional distress, pain and suffering and mental anguish compensatory and punitive damages, prejudgment interest on all monetary recovery, attorneys' fees and costs, and such other relief as is equitable and just.

## COUNT FIVE
### (Tile VII – Civil Rights Act – Race based Discrimination)

112.    Plaintiff, LANG, incorporates by reference paragraphs 1 through 69 above, as if fully restated here.

113.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e, et.seq. ("Title VII") against Defendant AT&T.

114.    At all times relevant, Defendant employed over 15 employees.

115.    At all times relevant, Defendant AT&T was Plaintiff, LANG's, employer as defined by Title VII.

116.    Defendant, AT&T, through its agents or supervisors, engaged in a pattern and practice of unlawful discrimination by subjecting Plaintiff to a racially hostile work environment

and discrimination and disparate treatment based on race and/or color in violation of Title VII.

117.    The above-described discriminatory conduct adversely affected the terms and conditions of Plaintiff, LANG's employment and interfered with Plaintiff, LANG's emotional well-being.

118.    Defendant AT&T at all times relevant hereto had actual and constructive knowledge of the conduct described and alleged in this complaint and incorporated herein.

119.    As a result of the discriminatory actions perpetrated by Defendant AT&T and maintained by Defendant's failure to protect Plaintiff from further discrimination, Plaintiff, LANG suffered emotional distress.

120.    Defendant AT&T violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of their employees and management as described and alleged in this complaint and incorporated herein.

121.    Defendant AT&T failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

122.    As a direct and proximate result of Defendant's AT&T's willful, knowing and intentional discrimination against him, Plaintiff, LANG has suffered and will continue to suffer pain and suffering, mental anguish and emotional distress and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff, LANG is thereby entitled to general and compensatory damages in amounts to be proven at trial.

123.    As a further direct and proximate result of Defendant's AT&T's violation of Title VII, as heretofore described, Plaintiff, LANG has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with

Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full

nature and extent of which are presently unknown to Plaintiff. Plaintiff, LANG requests that

attorneys' fees and costs be awarded pursuant to federal law.

124.    Plaintiff, LANG is informed and believes, and based thereon alleges, that the

outrageous conduct of Defendant AT&T described above was done with oppression and malice,

with a conscious disregard for his rights and with the intent, design and purpose of injuring him.

Plaintiff is further informed and believes that Defendant AT&T, through their officers, managing

agents and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct of

their employees and managers. By reason thereof, Plaintiff, LANG is entitled to punitive or

exemplary damages from Defendant in a sum according to proof at trial.

Wherefore, Plaintiff, SHEDRICK LANG prays this Court award judgment in his favor

against AT&T CORP. for compensatory damages including back pay, front pay (or

reinstatement) and benefits, damages for emotional distress, pain and suffering and mental

anguish, punitive damages, pre and post judgment interest, attorneys' fees, costs and such other

relief as this Court deems proper.

### COUNT SIX
### (Tile VII – Civil Rights Act - Retaliation)

125.    Plaintiff, LANG, incorporates by reference paragraphs 1 through 69 as if fully

restated here.

126.    Plaintiff, LANG, engaged in protective activity under Title VII when he objected

to racial and/or color-based discrimination, which is prohibited by Title VII.

127.    At all times relevant, Plaintiff, LANG, was qualified to perform the duties of his

job.

128.    Plaintiff, LANG, was subjected to adverse employment actions in retaliation for his complaints of racial and/or color-based discrimination; he was subjected to a hostile work environment and denied promotional opportunities and other privileges of his employment. Each of these actions by Defendant AT&T affected the compensation, terms, conditions, or privileges of Plaintiff's, LANG, employment, deprived him of employment opportunities, or adversely affected his status as an employee.

129.    Defendant AT&T at all times relevant hereto had actual and constructive knowledge of the conduct described and alleged in this complaint and incorporated herein.

130.    As a result of the retaliatory actions perpetrated by Defendant AT&T and maintained by Defendant's failure to protect Plaintiff from retaliation, Plaintiff, LANG suffered emotional distress.

131.    Defendant AT&T violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of their employees and management as described and alleged in this complaint and incorporated herein.

132.    Defendant AT&T failed to comply with their statutory duty to take all reasonable and necessary steps to prevent retaliation in the workplace and to prevent it from occurring in the future.

133.    As a direct and proximate result of Defendant's AT&T's willful, knowing and intentional retaliation against him, Plaintiff, LANG has suffered and will continue to suffer pain and suffering, mental anguish and emotional distress and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiff, LANG is thereby entitled to general and compensatory damages in amounts to be proven at trial.

134.    As a further direct and proximate result of Defendant's AT&T's violation of Title

VII, as heretofore described, Plaintiff, LANG has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.  Plaintiff, LANG requests that attorneys' fees and costs be awarded pursuant to federal law.

135.    Plaintiff, LANG is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant AT&T described above was done with oppression and malice, with a conscious disregard for his rights and with the intent, design and purpose of injuring him. Plaintiff is further informed and believes that Defendant AT&T, through their officers, managing agents and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct of their employees and managers.  By reason thereof, Plaintiff, LANG is entitled to punitive or exemplary damages from Defendant in a sum according to proof at trial.

136.    Defendant AT&T treated similarly situated employees who had not complained of racial and or color discrimination more favorably than it treated Plaintiff, LANG.

137.    Defendant's AT&T's stated reasons for taking the adverse actions it did are pretextual.

WHEREFORE, Plaintiff, SHEDRICK LANG, prays for judgment against AT&T CORP. awarding Plaintiff, SHEDRICK LANG, damages for lost wages, front pay (or reinstatement) and benefits, damages for emotional distress, pain and suffering and mental anguish compensatory and punitive damages, prejudgment interest on all monetary recovery, attorneys' fees and costs, and such

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

CHRISTOPHER C COPELAND, P.A.
1003 W. Indiantown Road, Ste 208
Jupiter, FL  33458
561-691-9048 (office)
866-259-0719 (FAX)


/s/ Christopher C Copeland
CHRISTOPHER C. COPELAND, ESQ.
Florida Bar #938076
*Attorney for Plaintiff*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 510-2017-02295 |

|  |  |
|---|---|
| **Florida Commission On Human Relations** | and EEOC |
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Shedrick Lang** | **(561) 603-8887** | **1972** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1821 Sonrisa Street, Palm Beach Shores, FL 33404** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **AT AND T** | **500 or More** | **(800) 635-6846** |

| Street Address | City, State and ZIP Code |
|---|---|
| **11760 Us Hwy 1,  North Palm Beach, FL 33408** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
|  |  |  |

| Street Address | City, State and ZIP Code |
|---|---|
|  |  |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **11-01-2016**   Latest: **09-28-2017**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)).*

**\*\*SEE ATTACHED LETTER\*\***

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Sep 28, 2017**<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

Exhibit A

I was hired for the position of Retail Sales Consultant on January 3rd, 2005.  During my tenure I earned exceptional sales, evaluations, and commendations for my work at AT&T during the period of 2005 – 2017.

Given my years of proven success in sales, customer service, and training, I attempted to advance and applied for upper level positions. During 2009 –2017, I applied for 117 positions. In 2012 I applied for an analyst position in the Legal Compliance Department and was interviewed but was not selected.  I applied numerous times with no luck.  In 2014 I was eventually offered the position of Associate Analyst in the Legal Compliance Department (an equivalent to a mail clerk position) even though I did not apply for it.  I took the position with the hopes of eventually moving from the 1a Associate Analyst position to a 1b Compliance Analyst position.

In November 2016, I had a meeting with Director Mary Anderson to discuss the unfair treatment that I was receiving.  The meeting was concluded with the understanding that I would apply for a Security Analyst position as soon as one became available.

On January 23, 2017, I applied for one of three open Compliance Analyst positions, and was granted an interview on March 29th only after inquiring numerous times on the status of my application.  After the interview I waited over a month for a response regarding the status of the unfilled position, I spoke with my supervisor, Rami Eid, and inquired if he had heard anything. He had not. He stated he would reach out to the interviewing Associate Directors for an update. On April 24th, I had a meeting with Mr. Gross and Ms. Nelson, who advised me that I was not selected for the position and that a more qualified candidate was selected.

I sent a letter on May 11, 2017 via certified mail to corporate Human Resources complaining about racial discrimination. On May 24, 2017, I received an email from Ashley Strong, Lead Consultant, EEO Human Resources, confirming receipt of my complaint.  On May 30, 2017, a phone conference was scheduled with Ms. Strong; however, she never contacted me.  I sent her a follow up email and I was later informed that my case was being referred to another consultant. On July 13, 2017, I spoke with Cherry Tomczeszyn, Lead Consultant, and discussed my complaint. She stated that she will be reviewing the documents and she will be contacting me soon.

On August 7, 2017, I contacted Ms. Cherry via email regarding the status of my complaint.  She responded to my email and stated that she found nothing that supports any form of discrimination and that my complaint will be closed.  My employer took no action with my complaint and the issues in my complaint were not addressed and investigated.  In September of 2017, I applied for the position of Assistant Store Manager. In retaliation for complaining about discrimination, I was not contacted for an interview.  I believe that I have not been promoted due to my race. I have applied numerous times for a position and my white counterparts were hired only after one attempt

 I believe I have been discriminated against due to my race/black in violation of Title VII of the Civil Rights Act of 1964 as amended.

Exhibit A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 510-2018-04856 |

| Florida Commission On Human Relations | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Shedrick Lang** | **(561) 603-8887** | **1972** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1821 Sonrisa Street, Palm Beach Shores, FL 33404** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **AT&T** | **500 or More** | **(800) 635-6846** |

| Street Address | City, State and ZIP Code |
|---|---|
| **11760 US Hwy 1, Suite 600, North Palm Beach, FL 33408** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **02-01-2018**  Latest: **06-07-2018**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

In retaliation for filing EEOC complaint (510-2017-02295), I was demoted and my salary was reduced. In February of 2018, Mary Anderson, Associate VP, informed me that my position (Associate Analyst-Managerial position) was being eliminated. I was demoted to the position of Sales Consultant at a Store which is a non-management position. I was informed that my salary will not be reduced. However, I was later informed by Connie Black, Human Resources Manager, that my salary would indeed be reduced. Ms. Black informed me that if I did not accept the demotion, they would assign an individual to help me secure another position; however, a position would not be guaranteed. Due to my employer's past discriminatory actions, I was not confident that a position would be found for me and I chose to remain in the position of Sales Consultant. In addition, Valerie Rojas, white, whose positon (Associate Analyst) was also eliminated was not demoted. In lieu of demotion, Ms. Rojas was promoted to the managerial position of Integrated Home Solution Consultant with an increase in pay. Although, I had more seniority, I did not receive nor was I considered for this positon/promotion. Furthermore, I have applied for 132 positions and I have not been contacted or interviewed for any of the positions that I applied for.

My employer has not provided any reason for the discriminatory actions.

I believe that I have been retaliated against in violation of Title VII of the 1964 Civil Rights Act, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Jun 07, 2018
Date                     Charging Party Signature

Exhibit B

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   **Shedrick Lang**
      **6008 Pine Tree Way**
      **Riviera Beach, FL 33410**

From:  **Miami District Office**
       **Miami Tower, 100 S E 2nd Street**
       **Suite 1500**
       **Miami, FL 33131**

☐  *On behalf of person(s) aggrieved whose identity is*
   *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2017-02295** | **Susan Diaz,** **Investigator** | **(786) 648-5870** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** **WITHIN 90 DAYS** **of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court** **WITHIN 90 DAYS of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jacqueline Gabriel for*

Enclosures(s)

**BRADLEY A. ANDERSON,**
**Acting District Director**

02/05/2021
*(Date Issued)*

cc:   **Respondent Representative**

      **Joe Epherson, Lead Consultant - EEO**
      **AT&T**
      **1057 Lenox Road, Room C210**
      **Atlanta, GA 30319**

Exhibit C

EEOC Form 161-B (11/2020)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:   **Shedrick Lang**
      **6008 Pine Tree Way**
      **Riviera Beach, FL 33410**

From:   **Miami District Office**
        **Miami Tower, 100 S E 2nd Street**
        **Suite 1500**
        **Miami, FL 33131**

[ ]   *On behalf of person(s) aggrieved whose identity is*
      *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2018-04856** | **Susan Diaz,** <br> **Investigator** | **(786) 648-5870** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jacqueline Gabriel for*

**BRADLEY A. ANDERSON,**
**Acting District Director**

02/05/2021
*(Date Issued)*

Enclosures(s)

cc:   **Respondent Representative**

      **Marybeth Dunne, Lead Consultant-EEO**
      **AT&T**
      **225 W Randolph St, Room 15**
      **Chicago, IL 60606**

Exhibit C